# State of Louisiana
## Secretary of State

09/06/2023

Legal Services Section
P.O. Box 94125, Baton Rouge, LA 70804-9125
(225) 922-0415

GEOVERA SPECIALTY INSURANCE COMPANY
C/O CORPORATION SERVICE COMPANY
450 LAUREL STREET, 8TH FLOOR
BATON ROUGE, LA 70801

Suit No.: 845233
24TH JUDICIAL DISTRICT COURT
JEFFERSON PARISH

CHIFICI ENTERPRISE, ET AL
vs
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, ET AL

Dear Sir/Madam:

I am enclosing a citation served in regard to the above entitled proceeding. If you are not the intended recipient of this document, please return it to the above address with a letter of explanation. All other questions regarding this document should be addressed to the attorney that filed this proceeding.

Yours very truly,

R. KYLE ARDOIN
Secretary of State

Served on: R. KYLE ARDOIN
Served by: B GARAFOLA

Date: 09/05/2023
Title: DEPUTY SHERIFF

KC

No: 1298958



(101) CITATION: PETITION FOR DAMAGES/EXHIBIT -STANDING CASE
MANAGEMENT ORDER/ EXHIBIT-STANDING ORDER FOR DISASTER
DISCOVERY PROTOCOLS/ EXHIBIT-INTERIM PROTECTIVE ORDER/          230826-2490-1
EXHIBIT-STANDING CASE MANAGEMENT ORDER EXHIBIT A: LIST OF
APPOINTED NEUTRALS;

24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON
STATE OF LOUISIANA

CHIFICI ENTERPRISE D/B/A DEANIES SEAFOOD
   versus
CERTAIN UNDERWRITERS AT LLOYDS LONDON,
INDIAN HARBOR INSURANCE COMPANY, QBE
SPECIALTY INSURANCE COMPANY, STEADFAST
INSURANCE COMPANY, GENERAL SECURITY
INDEMNITY COMPANY OF ARIZONA, UNITED           Case: 845-233    Div: "O"
SPECIALTY INSURANCE COMPANY, LEXINGTON         P 1  CHIFICI ENTERPRISE
INSURANCE COMPANY, HDI GLOBAL SPECIALTY SE,
OLD REPUBLIC UNION INSURANCE COMPANY,
GEOVERA SPECIALTY INSURANCE COMPANY,                    SERVED ON
TRANSVERSE SPECIALTY INSURANCE COMPANY,             R. KYLE ARDOIN
HARTFORD STEAM BOILER INSPECTION AND
INSURANCE COMPANY, TRAVELERS CASUALTY AND              SEP 0 5 2023
SURETY COMPANY OF AMERICA
                                                   SECRETARY OF STATE
                                                   COMMERCIAL DIVISION
 To:  GEOVERA SPECIALTY INSURANCE COMPANY
THROUGH ITS REGISTERED AGENT FOR SERVICE
OF PROCESS                                       SS#035059 $650.00
LOUISIANA SECRETARY OF STATE                     EBR#035060 $566.16
8585 ARCHIVES AVENUE
BATON ROUGE LA 70809


PARISH OF JEFFERSON


You are hereby summoned to comply with the demand contained in the PETITION FOR
DAMAGES/EXHIBIT -STANDING CASE MANAGEMENT ORDER/ EXHIBIT-STANDING
ORDER FOR DISASTER DISCOVERY PROTOCOLS/ EXHIBIT-INTERIM PROTECTIVE
ORDER/ EXHIBIT-STANDING CASE MANAGEMENT ORDER EXHIBIT A: LIST OF
APPOINTED NEUTRALS

 of which a true and correct copy accompanies this citation, or make an appearance either by
filing a pleading or otherwise, in the 24th Judicial District Court in and for the Parish of
Jefferson, State of Louisiana, within TWENTY-ONE (21) CALENDAR days after the service
hereof, under penalty of default.


This service was requested by attorney JEANNE K. DEMAREST and was issued by the Clerk
of Court on the 26th day of August, 2023.


            /s/ Wendy R. Gaudet
            Wendy R. Gaudet, Deputy Clerk of Court for
            Jon A. Gegenheimer, Clerk of Court


_____SERVICE INFORMATION_____

(101) CITATION: PETITION FOR DAMAGES/EXHIBIT -STANDING CASE
MANAGEMENT ORDER/ EXHIBIT-STANDING ORDER FOR DISASTER
DISCOVERY PROTOCOLS/ EXHIBIT-INTERIM PROTECTIVE ORDER/          230826-2490-1
EXHIBIT-STANDING CASE MANAGEMENT ORDER EXHIBIT A: LIST OF
APPOINTED NEUTRALS;

Received:_____  Served:_____  Returned:_____
        Thomas F. Donelon Courthouse : 200 Derbigny St. : Gretna LA 70053
Page 1 of 2
Service was made:

___ Personal                        ___ Domicilary _____

Unable to serve:
      ___ Not at this address    ___ Numerous attempts _____ times
      ___ Vacant               ___ Received too late to serve
      ___ Moved              ___ No longer works at this address
      ___ No such address      ___ Need apartment / building number
      ___ Other _____

Service: $_____      Mileage: $_____      Total: $_____

Completed by:_____ # _____
                        Deputy Sheriff
Parish of: _____

FILED FOR RECORD 08/22/2023 10:07:06
Shelley M. Mauterer, DY CLERK
JEFFERSON PARISH, LA

## 24th JUDICAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

DOCKET NO. 845233                                DIVISION "___"

## CHIFICI ENTERPRISE D/B/A DEANIE'S SEAFOOD

### VERSUS

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON
INDIAN HARBOR INSURANCE COMPANY
QBE SPECIALTY INSURANCE COMPANY
STEADFAST INSURANCE COMPANY
GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA
UNITED SPECIALTY INSURANCE COMPANY
LEXINGTON INSURANCE COMPANY
HDI GLOBAL SPECIALTY SE
OLD REPUBLIC UNION INSURANCE COMPANY
GEOVERA SPECIALTY INSURANCE COMPANY
TRANSVERSE SPECIALTY INSURANCE COMPANY
THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY
TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**

FILED: _____           _____
                                                          **DEPUTY CLERK**

## HURRICANE IDA

## PETITION FOR DAMAGES

The petition of **CHIFICI ENTERPRISE D/B/A DEANIE'S SEAFOOD**, a domestic

corporation domiciled in Jefferson Parish, State of Louisiana, respectfully represents that:

1.

Made defendants herein are:

A. **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,** upon information and

   belief, a foreign insurance company that is authorized to do and doing business in

   the State of Louisiana.

B. **INDIAN HARBOR INSURANCE COMPANY,** upon information and belief, a

   foreign insurance company that is authorized to do and doing business in the State

   of Louisiana.

C. **QBE SPECIALTY INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

D. **STEADFAST INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

E. **GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

F. **UNITED SPECIALTY INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

G. **LEXINGTON INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

H. **HDI GLOBAL SPECIALTY SE,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

I. **OLD REPUBLIC UNION INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

J. **GEOVERA SPECIALTY INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

K. **TRANSVERSE SPECIALTY INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

L. **HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

M. **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** upon information and belief, a foreign insurance company that is authorized to do and doing business in the State of Louisiana.

Made defendants herein are truly and justly indebted unto your petitioner for the following reasons to wit:

2.

At all times relevant herein, Petitioner, **CHIFICI ENTERPRISE D/B/A DEANIE'S SEAFOOD,** owned the following property ("Property") and contents located at **1713 LAKE AVENUE, METAIRIE, LA 70006.**

3.

At all times relevant hereto, Defendants provided insurance to **CHIFICI ENTERPRISE D/B/A DEANIE'S SEAFOOD** as follows: **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON (Policy Number AMR-62231-03), INDIAN HARBOR INSURANCE COMPANY (Policy Number AMP7534158-03), QBE SPECIALTY INSURANCE COMPANY (Policy Number MSP-25773-03), STEADFAST INSURANCE COMPANY (Policy Number CPP1061394-03), GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA (Policy Number 10T029659-09387-21-03), UNITED SPECIALTY INSURANCE COMPANY (Policy Number USI-22438-03), LEXINGTON INSURANCE COMPANY (Policy Number LEX-014711980-03), HDI GLOBAL SPECIALTY SE (Policy Number HAN-19245-03), OLD REPUBLIC UNION INSURANCE COMPANY (Policy Number ORAMPR003847-03), GEOVERA SPECIALTY INSURANCE COMPANY (Policy Number GVS-10614-00), TRANSVERSE SPECIALTY INSURANCE COMPANY (Policy Number TSAMPR0000090-00), THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY (Policy Number FBP2280613), TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA (Policy Number 105563638),** said policy(ies) was in full force and effect and covered the Property at issue and the contents therein including loss of rents and business income against perils including hurricanes, wind, hail, and/or water. Defendants

placed a valuation upon the covered Property and the contents therein and used this valuation for purposes of determining the premium charge to be made under the Policy at issue.

4.

On or about August 29, 2021, Hurricane Ida struck Southeast Louisiana as one of the most powerful storms in U.S. history. As detailed by the U.S. National Weather Service, "Hurricane Ida made landfall as Category 4 Hurricane in Lower Lafourche Parish near Port Fourchon with maximum sustained wind speeds of 150 mph". A Category 4 storm with unprecedented winds, Ida caused major damage to buildings throughout Southeast Louisiana, including the greater New Orleans area and surrounding parishes throughout this District. "The widespread damage spread well inland across Southeast Louisiana and Southern Mississippi as Hurricane Ida remained at hurricane strength into southwest Mississippi near McComb".

5.

On or about August 29, 2021, Hurricane Ida damaged the exterior, interior, and roof of the Property, allowing water to infiltrate the interior as a direct result of that damage and causing significant damage to and throughout the Property ("the Loss" or "Property Damage") which was covered under the Policy.

6.

The Property and contents therein were significantly damaged by and suffered a diminution in value because of Hurricane Ida. These significant Hurricane Ida damages to the Property (including the contents therein as well as lost rents and business income) occurred prior to any purported damage to the Property (or contents therein) by any non-covered peril, including any type of damage purportedly excluded by the policy.

7.

**CHIFICI ENTERPRISE D/B/A DEANIE'S SEAFOOD,** property was inspected by its insurers, **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, INDIAN HARBOR INSURANCE COMPANY, QBE SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, UNITED SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, HDI GLOBAL SPECIALTY SE, OLD REPUBLIC UNION**

**INSURANCE COMPNAY, GEOVERA SPECIALTY INSURANCE COMPANY, TRANSVERSE SPECIALTY INSURANCE COMPANY, THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA.** Its claim was assigned a claim number ("the Claim" or "Insurance Claim").

8.

Upon notification of the Loss, Defendants inspected the Property, and provided an estimate on the Claim. This estimate, however, grossly underreported the Property Damage.

9.

Defendants' inspection of the Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, LA Rev. Stat. § 22:1892 and §22:1973.

10.

Defendants' adjustment of the Claim was unreasonably low, unrealistic, and failed to provide the opportunity to properly conduct the needed repairs to the Property caused by Hurricane Ida.

11.

As a result of Defendants refusing and/or failing to adjust the Claim fairly, undersigned counsel was hired, and an expert adjuster was retained to inspect the Property and to document and estimate Property Damage and/or the Claim.

12.

After Defendants' inspection of the Property, Plaintiff's expert adjuster inspected the Property and created a report (the "Expert Report") documenting and detailing that the Property had been damaged by Hurricane Ida and those amounts were required to be paid by Defendants for repair, damages and/or reimbursement.

13.

Despite receiving this satisfactory proof of loss, Defendants have yet to tender adequate insurance proceeds.

14.

Plaintiff has attempted to recover the full value of their covered damages and/or insurance proceeds due from Defendants to no avail.

15.

Defendants' failure to comply with the terms of its own Policy caused and continues to cause significant delay to the repair of the Property and additional cost, mental pain and anguish, additional living expenses, rents, lost business income and general and/or special damages to Plaintiffs.

16.

Upon information and belief, relative to the Property Damage and/or Claim at issue, Defendants acted intentionally and/or negligently when it:

A. Failed to timely tender proceeds due after having received satisfactory proof of loss;

B. Misrepresented the terms and conditions of the Policy at issue;

C. Conducted the investigation and claims handling in bad faith;

D. Manipulated and/or set its pricing software to artificially suppress the cost of repairs below market value;

E. Failed to adequately pay for losses as required by the Policy, and/or

F. Failed to include adequate overhead and profit in its estimates of damages.

17.

Plaintiff has incurred additional expenses and/or delays in making repairs because Defendants failed to timely pay for losses due under the Policy and/or for the Claim at issue.

18.

Plaintiff has incurred professional expenses, including expert and attorney's fees, to prove that Defendants wrongfully failed to adequately/timely pay on the Claim at issue.

19.

Plaintiff has sustained and continue to sustain mental anguish and inconvenience because Defendants failed to timely pay for losses due under the Policy and/or for the Claim at issue.

20.

Plaintiff has incurred and will continue to incur loss of rents and business income as a result of the damages caused to the Property by Hurricane Ida, including those lost rents and business income that will be incurred during additional repair of the Property.

**BREACH OF INSURANCE CONTRACT**

21.

All allegations contained in this Petition are hereby adopted and re-alleged.

22.

Despite having adequate proof of loss, Defendants failed to timely tender adequate funds under the Policy.

23.

At all material times herein, an insurance contract, the Policy, existed between Plaintiff and Defendants, which provided coverage for the Property Damage and/or the Hurricane Ida Claim at issue herein.

24.

Upon information and belief, Defendants breached the Policy and/or insurance contract by intentionally and/or negligently:

    A. Failing to timely tender proceeds due after having received satisfactory proof of loss;

    B. Misrepresenting the terms and conditions of the Policy at issue;

    C. Conducting the investigation and claims handling in bad faith;

    D. Manipulating and/or setting its pricing software to artificially suppress the cost of repairs below market value;

    E. Failing to adequately pay for losses as required by the Policy, and/or

    F. Failing to include adequate overhead and profit in its estimates of damages.

25.

Plaintiff has suffered and continue to suffer general, special and/or consequential damages because of Defendants' breaches of the insurance contract.

## BAD FAITH

26.

All allegations contained in this Petition are hereby adopted and re-alleged.

27.

The actions and/or inactions of Defendants in failing to adequately compensate Plaintiff for the covered losses under the Policy were arbitrary, capricious, and without probable cause as those terms are used in conjunction with LA Rev. Stat. §§ 22:1892 and 22:1973, making Defendants liable for statutory bad faith penalties.

28.

Under LA Rev. Stat. § 22:1973, an insurer owes a duty of good faith and fair dealing to an insured and has an affirmative duty to adjust claims fairly and promptly; failing to pay a claim in a manner arbitrary, capricious or without probable cause is in violation of LA Rev. Stat. § 22:1973.

29.

"[F]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" is considered "bad faith" and is in violation of LA Rev. Stat. § 22:1973.

30.

LA Rev. Stat. § 22:1892 imposes bad faith penalties on an insurer who fail to adequately pay claims following satisfactory proof of loss within thirty (30) days, or fails to make a written offer to settle any property damage claim within thirty (30) days after receipt of satisfactory proofs of loss of that claim.

31.

Defendants are in violation of LA Rev. Stat. § 22:1973 and §22:1892 for failing to provide Plaintiff adequate payment in connection with the Property Damage and/or the Claim, despite having received satisfactory proof of loss following its own inspection(s) of the Property, and/or after Plaintiff provided expert documentation of the Property Damage and/or the Claim. Moreover,

Defendants' failure to timely tender adequate payment was unjustified, and without reasonable or probable cause or excuse.

32.

Defendants are in violation of LA Rev. Stat. §§ 22:1973 and 22:1892 for failing to make a written offer to settle the Property Damage and/or the Claim within thirty (30) days after receipt of satisfactory proofs of loss of the Property Damage and/or the Claim.

33.

Upon information and belief, relative to the Property Damage and/or Claim at issue, Defendants acted in bad faith by arbitrarily and capriciously:

    A. Failing to timely tender proceeds due after having received satisfactory proof of loss;

    B. Misrepresenting the terms and conditions of the Policy at issue;

    C. Conducting the investigation and claims handling in bad faith;

    D. Manipulating and/or setting its pricing software to artificially suppress the cost of repairs below market value;

    E. Failing to adequately and/or timely pay insurance proceeds as required by the Policy and the relevant statute;

    F. Failing to make a written offer to settle within thirty (30) days after receipt of satisfactory proofs of loss of the Claim; and/or,

    G. Failing to include adequate overhead and profit in its estimates of damages.

34.

Upon information and belief, further evidence of Defendants' bad faith will be revealed through the discovery process.

35.

Plaintiff has suffered and continue to suffer general, special and/or consequential damages because of Defendants bad faith.

## DAMAGES

### 36.

All allegations contained in this Petition are hereby adopted and re-alleged.

### 37.

Defendants are liable to Plaintiff, relative to the Property Damage and/or Claim at issue, under the following legal theories:

A. Breach of contract;

B. Bad faith and/or negligent claims adjusting practices, including but not limited to failing to adequately adjust the Property Damage and/or the Claim, misrepresentation of the terms of the applicable insurance Policy, purposeful and/or negligent under-scoping of damages leading to a failure to pay the relevant claims, purposeful and/or negligent price manipulation leading to a failure to pay the relevant claims, failure to pay timely for covered damages Defendants knew, or should have known existed at the time of the original adjustment/inspection as well as at the time of Defendants' receipt of the Expert Report, failing to timely tender adequate supplemental payment(s), etc., leading to various general, special and/or consequential damages, including but not limited to delayed and/or additional repair costs, mental anguish, inconvenience, and the incurrence of professional and/or expert fees; and/or

C. Any and all other legal theories of recovery that become apparent during the discovery process and proven at the trial of this matter.

### 38.

As a result of Defendants breaches of contract, bad faith claims adjusting, and other bad acts, Plaintiff has incurred and/or sustained the following, non-exclusive damages:

A. Diminution of the value of the Property;

B. Underpayment and/or delayed payment of covered damages/repair costs;

C. Actual repair costs, temporary repair costs, as well as increased repair costs;

D. Loss of use and/or additional living expenses;

E. Lost rent, revenue and business income;

F. Penalties delineated in LA Rev. Stat. §§ 22:1892 and 22:1973;

G. Mental anguish, suffering, and/or inconvenience;

H. Attorneys' fees, other professional fees, and litigation costs associated with the bringing of this action;

I. Other general, special and/or consequential damages; and,

J. Any and all other damages that are shown through discovery and/or proven at the trial of this matter.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, **CHIFICI ENTERPRISE D/B/A DEANIE'S SEAFOOD** prays that the defendants, **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, INDIAN HARBOR INSURANCE COMPANY, QBE SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, UNITED SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, HDI GLOBAL SPECIALTY SE, OLD REPUBLIC UNION INSURANCE COMPANY, GEOVERA SPECIALTY INSURANCE COMPANY, TRANSVERSE SPECIALTY INSURANCE COMPANY, THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA HARTFOR, CONNECTICUT,** be served with a copy of this petition and that after all legal delays it be required to answer same and after all proceedings, there be a judgment in favor of your Plaintiff, **CHIFICI ENTERPRISE D/B/A DEANIES SEAFOOD,** for all amounts commensurate with their damages, in such sums the Court deems just, together with legal interest, costs, and all general and equitable relief allowed. Further, Plaintiff prays for relief and judgment against the Defendants as follows:

A. Compensatory, general and/or contractual damages;

B. Consequential and/or special damages, including but not limited to those incurred as a result of Defendants' bad faith;

C. Penalties as a result of Defendants' bad faith;

D. Attorneys' fees as a result of Defendants' bad faith;

E. Prejudgment interest at the highest lawful rate allowed by law;

F. Interest on the judgment at the highest legal rate from the date of judgment until collected;

G. Lost rents, revenue and business income;

H. Additional living expenses;

I. Mental anguish, suffering, and inconvenience;

J. All expenses and costs of this action; and

K. Such further relief as this Court deems necessary, just, and proper.

Respectfully Submitted:

*Alvendia, Kelly & Demarest, LLC*

**RODERICK "RICO" ALVENDIA, 25554**
**J. BART KELLY III, 24488**
**JEANNE K. DEMAREST, 23032**
**KURT A. OFFNER, 28176**
**JENNIFER KUECHMANN, 36886**
**CASSIE P. GAILMOR, 33319**
909 Poydras Street, Suite 1625
New Orleans, Louisiana 70112
Telephone: (504) 200-0000
Facsimile: (504) 200-0001
Email: jeanne@akdlalaw.com
rico@akdlalaw.com
bart@akdlalaw.com
kurt@akdlalaw.com
jennifer@akdlalaw.com
cassie@akdlalaw.com

**ATTORNEYS FOR PLAINTIFFS**

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE

DEPUTY CLERK
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, LA

**PLEASE SERVE:**

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**
(Via Long Arm)
Through Its Registered Agent for Service of Process
LLOYD'S AMERICA, INC.
280 Park Avenue, East Tower, 25th Floor
New York, NY 10017

**INDIAN HARBOR INSURANCE COMPANY**
Through Its Registered Agent for Services of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**INDIAN HARBOR INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
SARAH MIMS, GENERAL COUNSEL
505 Eagleview Boulevard, Suite 100
Exton, PA 19341-1120

**QBE SPECIALTY INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**QBE SPECIALTY INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
CT CORPORATION SYSTEM
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**STEADFAST INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**STEADFAST INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
GENERAL COUNSEL, LAW DEPARTMENT, STEADFAST INSURANCE COMPANY
1299 Zurich Way
Schaumburg, IL 60196

**GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA**

Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE

8585 Archives Avenue
Baton Rouge, LA 70809

**GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA**
(Via Long Arm)
Through Its Registered Agent for Service of Process
RODOLPHE HERVE, CEO
28 Liberty Street, Suite 5400
New York, NY 10005

**GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA**
(Via Long Arm)
Through Its Registered Agent for Service of Process
MAXINE VERNE, GENERAL LEGAL COUNSEL
28 Liberty Street, Suite 5400
New York, NY 10005

**UNITED SPECIALTY INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**UNITED SPECIALTY INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
TERRY L. LEDBETTER
1900 L. Don Dodson Drive
Bedford, TX 76021

**LEXINGTON INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**LEXINGTON INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
DIVISION EXECUTIVE, COMMERCIAL PROPERTY
99 High Street
Boston, MA 02110

**LEXINGTON INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Services of Process
AIG PROPERTY CASUALTY U.S.
175 Water Street – 18th Floor
New York, NY 10038

**LEXINGTON INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
LEXINGTON INSURANCE COMPANY
99 High Street
Boston, MA 02110

**HDI GLOBAL SPECIALTY SE**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**HDI GLOBAL SPECIALTY SE**
(Via Long Arm)
Through Its Registered Agent for Service of Process
MENDES & MOUNT, LLP
750 Seventh Avenue
New York, NY 10019

**OLD REPUBLIC UNION INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**OLD REPUBLIC UNION INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
OLD REPUBLIC SPECIALTY INSURANCE UNDERWRITERS, INC.
Attn: Office of General Counsel
370 North Michigan Avenue
Chicago, IL 60601

**GEOVERA SPECIALTY INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**GEOVERA SPECIALTY INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
GEOVERA HOLDINGS, INC.
Attn: Robert Hagedorn, General Counsel
1455 Oliver Road
Fairfield, CA 94534

**TRANSVERSE SPECIALTY INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**TRANSVERSE SPECIALTY INSURANCE COMPANY**
(Via Long Arm)
Through Its Registered Agent for Service of Process
CORPORATE SECRETARY
155 Village Boulevard, Suite 205
Princeton, NJ 08540

**THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE

8585 Archives Avenue
Baton Rouge, LA 70809

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**
Through Its Registered Agent for Service of Process
LOUISIANA SECRETARY OF STATE
8585 Archives Avenue
Baton Rouge, LA 70809

**12300758**

FILED FOR RECORD 08/23/2023 10:34:59
Mandy Plaisance DY CLERK
JEFFERSON PARISH LA

# 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

## IN RE: HURRICANE IDA CLAIMS

FILED:_____

_____
**DEPUTY CLERK**

### STANDING CASE MANAGEMENT ORDER REGARDING
### CERTAIN PROPERTY DAMAGES SUITS ARISING FROM HURRICANE IDA

On August 29, 2020, Hurricane Ida came ashore near Port Fourchon, Louisiana and traveled through Jefferson Parish. As a Category 4 (near 5) hurricane, it was the fifth strongest storm to ever impact the United States. Hurricane Ida tied the Last Island Hurricane in 1856 and Hurricane Laura in 2020 as the strongest to strike Louisiana, based on wind speed. The President of the United States issued a Declaration of a Major Disaster for the State of Louisiana on August 29, 2021. (*See* FEMA-4611-DR.) The Declaration expressly includes Jefferson Parish as an "adversely affected area by this major disaster."[1] Major Hurricane-force winds, with gusts in excess of 155 mph, covered the entirety of Jefferson Parish, and inflicted catastrophic damage throughout this Court's jurisdiction. Hurricane Ida may sometimes hereinafter be referred to as the "Hurricane," and the causes of action arising therefrom may sometimes be referred to as "the Hurricane Cases."

In the aftermath of this catastrophic natural disaster, this Court recognizes that it will soon preside over substantial volumes of insurance coverage-related litigation linked to the Hurricane. Additionally, and like so many other courts across the globe, this Court has faced significant challenges to conducting court business for the better part of a year, as a result of the on-going COVID-19 pandemic. The residents and businesses of Louisiana have similarly struggled to cope with the negative economic impact of COVID-19, even before Hurricane Ida.

---

[1] https://www.fema.gov/disaster-federal-register-notice/4611-dr-la-initial-notice



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:1 of 14 - Jefferson Parish Clerk of Court: 231839

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102

12300758

In the weeks following Hurricane Ida, many related lawsuits will be filed and be pending before this Court. In Act 318 of the 2020 Regular Session the Louisiana Legislature amended the laws expanding judicial authority related to special masters and mandatory mediation in cases stemming from certain major disasters ("Act 318").[2]

Act 318 authorizes this Court to enter this CMO, and after consultation with and upon the recommendation of the Special Master and in consideration of the high volume of cases from Jefferson Parish in state and federal courts, this Court finds it warranted to enter this CMO to best accommodate the adjudication of Hurricane Cases in this Court.

Accordingly, this Court's aim continues to be the just and expedient resolution of these related matters, in spite of the increased strain on the Court's resources, and with the primary goal of enabling the Jefferson Parish community to move forward with crucial recovery efforts, in the aftermath of Hurricane Ida, and the COVID-19 pandemic. In consideration of these aims and the law, after due consideration of the Case Management Orders and discovery protocols implemented by the 14th Judicial District Court and the U.S. District Court for the Western District of Louisiana following Hurricanes Laura and Delta, the 24th Judicial District Court issues the instant Case Management Order, to-wit:

**IT IS HEREBY ORDERED** that this Case Management Order shall be immediately applicable to all Hurricane Cases.

## SECTION 1. DISASTER PROTOCOLS FOR INITIAL DISCOVERY

The Court has reviewed the Disaster Litigation Initial Discovery Disaster Protocols adopted by 14th Judicial District Court and the U.S. District Court for the Western District of Louisiana following Hurricanes Laura and Delta filed in those courts. The Federal Court considered the Disaster Protocols implemented by the U.S. District Court for the Southern District of Texas following Hurricane Harvey. The 14th Judicial District Court considered the Disaster Protocols implemented by the Federal Courts. These Disaster Protocols call for prompt sharing of specific information to promote uniformity, to facilitate prompt evaluation of each case, to foster communication between the parties, and to facilitate an

---

[2] *See* La. R.S. 13:4165(F).

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:2 of 14 - Jefferson Parish Clerk of Court: 231839

expedited mediation procedure. Accordingly, on _____, 2022, this Court issued a Standing Order for Disaster Discovery Protocols in Certain Property Damage Suits Arising from Hurricane Ida ("Disaster Discovery Protocols") therefore,

IT IS FURTHER ORDERED that the Disaster Discovery Protocols Initial Discovery Protocols are deemed incorporated into this CMO *in extenso* and are applicable to all Hurricane Cases filed in this Court. The disclosures and exchange of information required by the Disaster Discovery Protocols Order issued on _____, 2022 shall be due forty-five (45) days from the date that defendant files responsive pleadings. This deadline may sometimes hereinafter be referred to as the "Disclosure Deadline." No extension or delay in the time to file responsive pleadings shall extend the Disclosure Deadline to more than 75 days from the original deadline to file responsive pleadings unless the extension is by the consent of all parties or pursuant to an express Order of the Court.

IT IS FURTHER ORDERED that each party shall supplement their Initial Disclosures at least fifteen (15) days prior to any scheduled mediation pursuant to the CMO.

Nothing in this Section prevents other discovery in accordance with the provisions of the Code of Civil Procedure, except that requests for subpoenas and subpoenas *duces tecum* shall not be submitted during the SSP without pre-approval of the Special Master or leave of the Court.

## SECTION 2. SPECIAL MASTER AND APPOINTED NEUTRALS

Considering the foregoing reasons supplied by the Court in the introduction, *supra*, the Court finds that exceptional circumstances exist which warrant the appointment of a Special Master to assist with the efficient and fair administration of all Hurricane Cases. Pursuant to the Court's inherent judicial power and its authority under La. R.S. 13:4165, *et seq*,

IT IS FURTHER ORDERED that JONATHAN C. PEDERSEN, BLAIR C. CONSTANT and DONALD MASSEY, are hereby appointed as the Special Masters (hereinafter "Special Master") for Hurricane Cases in the 24th Judicial District Court.

EFILE: 01/05/2023 12:51 PM JEFF PAR 747832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



**12300758**

As part of this appointment, the Court mandates that the Special Master shall proceed with all reasonable diligence, and shall exercise the respective rights and responsibilities to direct the Streamlined Settlement Process ("SSP") as provided in this Order.

**IT IS HEREBY FURTHER ORDERED** that the Appointed Neutrals, referenced in Section 3(B)(2)(a), *infra*, are hereby appointed and shall proceed with all reasonable diligence and shall exercise their rights and responsibilities under the Streamlined Settlement Process ("SSP") as the Special Master may direct.

A. **The Special Master.** The Special Master shall administer, coordinate, and preside over the SSP. This authority includes the power to order parties and/or party representatives with full power of settlement to submit briefings, engage in discovery, and attend settlement conferences. Nothing in this part shall prevent regular formal discovery or motions to compel to be filed with and heard by the assigned District Judge.

B. **Compensation of Special Master and Appointed Neutrals.** The Special Master and all other appointed neutrals under the SSP (the "Appointed Neutrals") shall be compensated in the amount of:

    (1)   $400 per hour for the Special Master;

    (2)   $400 per hour for the Appointed Neutrals;

    (3)   $250 per case for the Special Master for administrative expenses in administering, scheduling, organizing, and coordinating the Streamlined Settlement Process for each case amongst the parties as well as with the Appointed Neutrals and shall be paid by the parties at the time their respective initial pleadings are filed; and

    (4)   All actual expenses of the Special Master and Appointed Neutrals, including but not limited to travel, meeting rooms and video conference means.

Unless otherwise directed by mutual agreement of the parties or as otherwise directed by the Special Master, all of the above fees and expenses shall be paid twenty-five percent (25%) by the plaintiff(s) and seventy-five (75%) by the defendant(s).

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



**12300758**

C. **Role of Special Master and Appointed Neutrals**

 (1) The Special Master and Appointed Neutrals may communicate ex parte with the Court when deemed appropriate by the Court, or the Special Master, without providing notice to the parties, including communication certifying that the parties have complied with the requirements of the SSP.

 (2) The Special Master and Appointed Neutrals may initiate contact and communicate with counsel for any party as he or she deems appropriate with respect to the efficient administration and management of the SSP.

 (3) The Special Master and Appointed Neutrals, the parties, and those assisting the foregoing shall be bound by the confidentiality of the settlement discussions.

 (4) The Special Master may designate any of the Appointed Neutrals to act as his deputy from time to time and to perform any duties of the Special Master.

D. **Notice of Opt-Out Motion to the Special Master.** Any party to a Hurricane Case may file a motion with the assigned District Judge requesting an opt out from the SSP for good cause shown, which motion must be filed within the time delay contained in Section 3, *infra*.

**IT IS FURTHER ORDERED** that any party filing an opt out motion shall copy the Special Master, and that the parties shall provide notice of the Court's Order on the motion to opt out to the Special Master, regardless whether the motion to opt out is granted or denied.

**IT IS FURTHER ORDERED** that counsel for any party to a Hurricane Case that has been provided a copy of this Order shall be required to provide email notice to the Special Master of the initial pleadings and all subsequent filings in any Hurricane Case (knowledge of this provision is presumed where counsel for the party has been provided a copy of this Order). The Special Master shall send an Initial Informational Package on the SSP to all parties and/or counsel of record for Hurricane Cases subject to the SSP.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:5 of 14 - Jefferson Parish Clerk of Court: 231839

**12300758**

## SECTION 3. STREAMLINED SETTLEMENT PROCESS ("SSP")

Within 30 days of the filing of the defendant's responsive pleading (or within 15 days of the transmittal to their counsel of a copy of this Order, including by electronic or other means - whichever is later), either party may file a motion to opt out of this Streamlined Settlement Process ("SSP") for good cause shown. A motion to opt-out of the SSP is not a responsive pleading for any deadline contained in this CMO. Unless the Court authorizes an opt-out, the parties shall participate in the three-stage Streamlined Settlement Process, which is described as follows:

A. **First Stage: Initial Settlement Conference with Special Master.** Within 30 days of the Disclosure Deadline in all Hurricane Cases, all parties shall participate in an informal settlement conference with the Special Master or his Deputy. In light of the COVID-19 pandemic as well as the desire to resolve the Hurricane Cases as expeditiously as possible, settlement conferences should be conducted, where possible, by phone or audiovisual communication, including but not limited to Zoom, Skype, or similar platforms. Counsel for each plaintiff and for each defendant must have full authority from their clients to resolve the case, who shall be readily available by telephone if circumstances for that particular settlement conference require assistance.

B. **Second Stage: Mediation.** Cases that do not resolve during the initial settlement conference shall be set for a formal mediation. The Special Master shall assign each Hurricane Case to an Assigned Neutral from the court approved list found in Paragraph B(2) of this Subsection, and it is the goal that Assigned Neutrals complete mediation within 70 days of appointment. The Special Master (or Appointed Neutral for the case) may set a scheduling conference, or communicate with counsel about availability through other means, but shall seek to schedule the mediations in an expeditious manner at mutually convenient times and dates for all parties.

   (1) **Conduct of Mediation.**

      (a) After scheduling of an agreed mediation, counsel for each party shall submit confidential statements solely to the appointed neutral. The appointed neutral shall determine, after conferring with the parties, on the length of the

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:6 of 14 - Jefferson Parish Clerk of Court: 231839

.12300758

confidential mediation statements and the permissible number of exhibits attached thereto.

(b) Plaintiff(s) shall be present in-person along with counsel (subject to accommodations approved by the case's Appointed Neutral). Defense counsel shall also attend in-person. A representative from defendant(s) is encouraged to attend, but unless otherwise directed by the Special Master the defendant(s) representative shall not be required to attend if counsel for the defendant has full authority to resolve the case. In addition, a representative of the defendant shall be readily available by telephone, if circumstances for that particular mediation require assistance.

(c) To the extent agreed by the parties and the case's Appointed Neutral, this mediation conference may be conducted by phone or other means of electronic audio or video communication, including but not limited to Zoom, Skype, or similar platforms.

(d) As part of this Streamlined Settlement Process, the attendees may each make opening statements but there shall be no live witness testimony.

(2) **Approved Neutrals.** The Court hereby initially designates and appoints the following individuals as "neutrals" (mediators) for the SSP:

(a) Any person designated by the Special Master after consultation with the Court who is qualified pursuant to R.S. 13:4165(F)(5)(6), including:

Hon. Carolyn Gill-Jefferson (ret.)   Hon. "Rusty" Knight (ret.)

Hon. Cornelius Regan (ret.)   Hon. Ronald J. Sholes (ret.)

Hon. Franz Ziblich (ret.)   Ashley Bass, Esq.

Jacques Bezou, Esq.   Robert Raymond, Esq.

Blair C. Constant, Esq.   Bobby M. Harges, Esq.

Michelle Craig, Esq.   Ross Legarde, Esq.

Fred Herman, Esq.   Jonathan Pedersen, Esq.

Donald Massey, Esq.   Chadwick J. Mollere, Esq.

Roger A. Javier, Esq.   Bryan Reuter, Esq.

Ronald L. Faia, Jr., Esq.   Hon. Glenn Ansardi (ret.)

Joseph Hassinger, Esq.   Stacy Palowsky, Esq.

Brigid Collins, Esq.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



(b)     Any person designated as a neutral pursuant to any Case Management Order that the U.S. District Court for the Eastern District of Louisiana may enter in connection with Hurricane Ida cases.

(3)    **Neutral Training.** The Special Master may undertake to provide special training to the neutrals, including coordinating participation in training prepared for the Streamlined Settlement Process. The Special Master and his Deputy may jointly form a plaintiffs' liaison committee and a defense liaison committee or may coordinate with any related Federal Court liaison committees for Hurricane Cases. If formed, the Special Master or his Deputy may solicit input and responses concerning commonly occurring legal issues that the liaison committees, from experience, believe may arise in a large number of these cases, along with relevant case law or other authority addressing these issues. While the ultimate determination of any such common issue may well be fact driven, and the outcome of any legal issue will be determined by the Court, the Special Master or his Deputy may seek this information in order to educate and fully prepare the appointed neutrals with the hope of expediting the settlement process. The Special Master or his Deputy may facilitate discussions by and among the appointed neutrals to promote, to the extent possible, consistency in the resolution of cases.

(4)    **Neutral Reporting.** Within 5 days of the mediation date, the Neutral shall inform the Special Master of the outcome of the mediation.

(5)    **Stipulation for Mediation.** The Neutral, the Parties and counsel for the parties must execute the Stipulation for Mediation attached hereto as Exhibit A.

C.    **Third Stage: Final Settlement Conference with Special Master.** In the event a case does not settle during the Mediation Phase, the parties shall participate in a final settlement conference with the Special Master or his Deputy. The Special Master should aspire to conduct this final settlement conference within 45 days of receiving notice from the Neutral that a particular case did not settle during the mediation phase. To facilitate this final settlement conference, the Special Master or his Deputy may require the parties to submit additional mediation statements and set restrictions upon the number and type of exhibits attached thereto. The Special Master

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:8 of 14 - Jefferson Parish Clerk of Court: 231839

.12300758

or his Deputy may also communicate with the Neutral who conducted the mediation so as to facilitate a productive final settlement conference. A scheduling order will not be entered by the Court unless the Special Master or his Deputy have filed a certificate into the record attesting that all parties have participated in the final settlement conference with the Special Master or his Deputy.

D.   **Extensions of Time.**  Upon a joint request by the parties, for other good cause shown, or for case management purposes, the Special Master or his deputy may extend any deadline specified in this Order by up to 15 days.

## SECTION 4. COURT APPOINTED UMPIRES REQUIRED UNDER POLICIES

If an insurance policy implicated in a Hurricane Case provides for court appointment of a neutral or third appraiser for valuation disputes (hereinafter referred to as an "Umpire"), any request for the appointment by this Court of an Umpire shall only occur if the parties have been unable to agree on their own.

A.   **Where Parties HAVE been allowed to Opt Out of the SSP.**  If any party has been permitted to opt out of the SSP following a timely motion for the same, any party requesting appointment of an Umpire shall file a motion requesting same with the case's assigned District Judge, which motion shall be set for contradictory hearing. Counsel for either or both the Insured and the Insurer may also submit a joint motion requesting appointment of an Umpire to the Civil Duty Judge, who may agree to hear the motion during their respective duty week.

B.   ***Where Parties Have NOT Opted Out of the SSP.***  In all other cases, any request for the appointment by the Court of an Umpire shall be made in writing no later than 14 days following the filing of the defendant's responsive pleading. Any motion or request for this Court's appointment of an Umpire shall be submitted to the Special Master in the same manner as provided for a discovery dispute under the SSP, and the parties shall notify the Special Master and transmit the Umpire request to the Special Master via email at *jcpedersen@specialmasterservices.com*. The deadline may be extended by the Special Master in exceptional circumstances.

C.   ***Umpire-Only Filing.***  If a requesting party is seeking court appointment of an Umpire and no case is otherwise filed or pending before this Court (an "Umpire Only Filing"), then the parties shall follow the same procedures in

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



**12300758**

Subsection 4(1). Any such request shall be made in writing no later than 14 days following the filing of the defendant's responsive pleading, and any such motion or request for this Court's appointment of an Umpire shall be referred to the Special Master under the above captioned general docket created for the Hurricane Cases. The parties shall notify the Special Master and transmit the Umpire request to the Special Master via email at *jcpedersen@specialmasterservices.com*. The deadline may be extended by the Special Master in exceptional circumstances.

(1)     An Insurer is required to provide written notice of the request to any known counsel for the Insured (or directly to an unrepresented Insured). An Insured is required to provide written notice of the request to any known counsel of Insurer (if any) or alternatively to the Insurer's primary point of contact on the claim with Insured. The appraisers previously selected by each party shall also be provided notice, and their contact information (phone and email address) shall be provided in the request for appointment of an Umpire.

(2)     A written report and recommendation following the Umpire's appointment shall be issued to the parties, and shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the assigned District Judge following a motion filed with the assigned District Judge within seven days of transmittal of the written report.

(3)     In an Umpire Only Filing, the Special Master shall provide the report and recommendation to the parties, who will in turn provide the same to the civil Duty Judge as of the time of the issuance of the report and recommendations. Similarly, the recommendation shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the civil Duty Judge following a motion filed with the civil Duty Judge within seven days of transmittal of the written report.

## SECTION 5. CLERK OF COURT AND NOTICE

A.     Any Plaintiff filing a Hurricane Case should note on its cover letter to the Clerk, in **all CAPS type** and red font (if possible) that the matter is a **"HURRICANE CASE."** Each caption and on each pleading, **"HURRICANE CASE" in bold print shall follow the docket number.** If the Special Master learns the Order has not been entered by the Clerk of

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



**12300758**

Court, he shall serve it on the parties by email and may file proof of the same into the record at no cost.

B.  In all Hurricane Cases, a copy of this Order shall be served on the defendant(s) along with the Petition and Citation. The Clerk of Court shall include a reference that the Case Management Order is served with the Petition in the Citation issued. The Clerk of Court shall also provide a copy to the plaintiff by any authorized means.

C.  The Clerk of Court shall transmit via email, at least weekly, to the Special Master the docket numbers, case caption, and attorney contact information for any Hurricane Cases filed.

D.  Any party making any filing in a Hurricane Case subject to this Order shall serve a courtesy copy on the Special Master in the same manner as enrolled counsel via email at *jcpedersen@specialmasterservices.com*.

## SECTION 6. COURT SUPERVISION

The Disaster Discovery Protocols and Streamlined Settlement Process shall, at all times, be subject to the ultimate control and supervision of the Court. This Case Management Order for Hurricane Cases is subject to modification pursuant to further orders of this Court. All provisions of this Order shall become effective December 1, 2022 and shall be applicable to all cases whether then pending or thereafter filed.

**DONE AND SIGNED** this _14th_ day of _December_ , 2022, at _Gretna_ , Jefferson Parish, Louisiana.

JUDGE NANCY A. MILLER
CHIEF JUDGE
DIVISION "I"

JUDGE RAYMOND S. STEIB, JR.
DIVISION "A"

JUDGE R. CHRISTOPHER COX III
DIVISION "B"

JUDGE JUNE BERRY DARENSBURG
DIVISION "C"

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



JUDGE SCOTT U. SCHLEGEL
DIVISION "D"

JUDGE FRANK A. BRINDISI
DIVISION "E"

JUDGE MICHAEL P. MENTZ
DIVISION "F"

JUDGE E. ADRIAN ADAMS
DIVISION "G"

JUDGE DONALD "CHICK" FORET
DIVISION "H"

JUDGE STEPHEN C. GREFER
DIVISION "J"

JUDGE ELLEN SHIRER KOVACH
DIVISION "K"

JUDGE DONALD A. ROWAN, JR.
DIVISION "L"

JUDGE SHAYNA BEEVERS MORVANT
DIVISION "M"

JUDGE STEPHEN D. ENRIGHT, JR.
DIVISION "N'

JUDGE DANYELLE M. TAYLOR
DIVISION "O"

JUDGE LEE V. FAULKNER, JR.
DIVISION "P"



EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102

.12300758

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

## IN RE: HURRICANE IDA CLAIMS

FILED:_____

_____
**DEPUTY CLERK**

### STIPULATION FOR MEDIATION IN STREAMLINED SETTLEMENT PROGRAM

**IT IS HEREBY STIPULATED AND AGREED** by and between the undersigned
parties:

1. The parties have agreed to submit their dispute to mediation pursuant to the SSP,
   as specified in the Standing Case Management Order (and any relevant
   amendments).

2. No party shall be bound by anything said or done during the mediation, unless
   either a written and signed stipulation is executed, or the parties enter into a written
   and signed agreement. The appointed neutral may meet in private conference with
   less than all parties. Information obtained by the neutral, either in written or oral
   form, shall be confidential and, except as provided by Order of the Court, it shall
   not be revealed by the neutral unless and until the party who provided that
   information agrees to its disclosure.

3. The mediation process shall be considered a settlement negotiation for the
   purpose of all federal and state rules protecting disclosures made during such
   conferences from later discovery or use in evidence. The entire procedure shall be
   confidential, and no stenographic or other record shall be made except to
   memorialize a settlement record. All communications, oral or written, made during
   the mediation by any party or a party's agent, employee, or attorney are
   confidential and, where appropriate, are to be considered work product and
   privileged. Such communications, statements, promises, offers, views and
   opinions shall not be subject to any discovery or admissible for any purpose,
   including impeachment, in any litigation or other proceeding involving the parties.
   Provided, however, that evidence otherwise subject to discovery or admissible is
   not excluded from discovery or admission in evidence simply as a result of it having
   been used in connection with this mediation process.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300758 MORTGAGE BOOK 5014 PAGE 102



**12300758**

4. The appointed neutral and his or her agents shall have the same immunity as judges and court employees have under Louisiana law and jurisprudence from liability for any act or omission in connection with the mediation, and from compulsory process to testify or produce documents in connection with the mediation.

5. The parties (i) shall not call or subpoena the appointed neutral as a witness or expert in any proceeding relating to: the mediation, the subject matter of the mediation, or any thoughts or impressions which the appointed neutral may have about the parties in the mediation, and (ii) shall not subpoena any notes, documents or other material prepared by the appointed neutral in the course of or in connection with the mediation, and (iii) shall not offer into evidence any statements, views or opinions of the appointed neutral.

6. Any party to this Stipulation is required to attend at least one mediation session and as may be directed by the Special Master as many other sessions thereafter as may be helpful in resolving this dispute.

7. An individual with final authority to settle the matter and to bind the party shall attend the mediation on behalf of each party.

Dated:_____

_____
First Plaintiff's Signature

_____
Second Plaintiff's Signature

_____
Counsel for Plaintiff

_____
Counsel for Plaintiff

_____
Appointed Neutral

_____
First Defendant's Signature

_____
Second Defendant's Signature

_____
Counsel for Defendant

_____
Counsel for Defendant

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 .:: 12300758 MORTGAGE BOOK 5014 PAGE 102


JON A. GEGENHEIMER

01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:14 of 14 - Jefferson Parish Clerk of Court: 231839

12300759

FILED FOR RECORD 08/23/2023 10:35:16
Mandy Plaisance DY CLERK
JEFFERSON PARISH LA

## 24ᵀᴴ JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

## IN RE: HURRICANE IDA CLAIMS

FILED:_____

                                        _____
                                        **DEPUTY CLERK**

### STANDING ORDER FOR DISASTER DISCOVERY PROTOCOLS
### IN CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANE IDA

This Court hereby issues the following Standing Order establishing protocols for discovery ("Disaster Discovery Protocols") for all cases involving first-party insurance property damage claims arising from Hurricane Ida ("Hurricane Cases"),

**IT IS ORDERED** that within forty-five (45) days after the defendant's submission of a responsive pleading or motion, the parties must exchange any documents or information listed in these Disaster Discovery Protocols, for any such time periods identified in these Disaster Discovery Protocols.

**IT IS FURTHER ORDERED** that all parties shall remain under an ongoing duty to supplement their responses. No extension or delay in the time to file responsive pleadings shall extend the Disclosure Deadline to more than seventy (75) days from the original deadline to file responsive pleadings unless the extension is by the consent of all parties or pursuant to an express Order of this Court. Nothing in this Section prevents other discovery in accordance with the provisions of the Code of Civil Procedure except the restriction on subpoenas and subpoenas duces tecum articulated in Section 1 of the Standing Case Management Order Regarding Certain Property Damages Suits Arising From Hurricane Ida issued on *December 14*, 2022.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:1 of 10 - Jefferson Parish Clerk of Court: 231840

12300759

**IT IS FURTHER ORDERED** that a party may object to disclosure of these Disaster Discovery Materials only if the material is Privileged as that term is defined herein. Any party withholding disclosure of any information or documents, where said disclosure is required pursuant to the Disaster Protocols, shall produce a privilege log to opposing counsel on or before the Disclosure Deadline. This privilege log shall detail all information or documents that it declined to produce on the basis that the material is privileged. The log should include the author of the document, the recipient of the document, the date of the document, and the nature of the privilege asserted.

Any dispute concerning privileged items shall be resolved by contradictory motion before the assigned District Judge. The District Judge may direct that the disputed items be provided to the Court for *in camera* inspection prior to the hearing of the motion.

**IT IS FURTHER ORDERED** that on belief of a party that good cause exists as to why a particular case should be exempted from the Disaster Protocols, in whole or in part, that party must file their objection with the Court prior to the expiration of the 45-day period set forth herein.

## DISASTER DISCOVERY PROTOCOLS

**PART 1: INTRODUCTION AND DEFINITIONS.**

(1)   Statement of purpose.

      a.   These Disaster Discovery Protocols apply to cases involving first-party insurance property damage claims arising from natural disasters ("Disaster Cases"). The Disaster Protocols are designed to be implemented by trial judges, lawyers, and litigants in state and federal courts. The Disaster Protocols make it easier and faster for the parties and their counsel to: (1) exchange important information and documents early in the case; (2) frame the issues to be resolved; (3) value the claims for possible early resolution; and (4) plan for more efficient and targeted subsequent formal discovery, if needed.

      b.   The Disaster Protocols are not intended to preclude or modify any party's rights to formal discovery as provided by law or other

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103



JON A. GEGENHEIMER

applicable rules. Responses to the Disaster Protocols do not waive or foreclose a party's right to seek additional discovery under the applicable rules.

c.   Except as modified by the Court, these Disaster Discovery Protocols were prepared by a balanced group of highly experienced attorneys from across the country with expertise in Disaster Cases. The Disaster Protocols require parties to exchange information and documents routinely requested in every disaster case. The information and documents required to be produced includes favorable as well as unfavorable information and documents, is limited to information and documents that are not subject to objection, and is limited to the information and documents most likely to be important and useful in facilitating early settlement discussion and resolving or narrowing the issues.

(2)   **Definitions.** The following definitions apply to these Disaster Discovery Protocols:

a.   ***Claimed loss.*** "Claimed Loss" means the loss or damage that the Insured seeks to recover from the Insurer in the litigation.

b.   ***Document.*** "Document" and ·documents" are defined to be synonymous in meaning and equal in scope to the phrase "documents or electronically stored information" in FRCP 34(a)(I)(A) or similar state rules. A draft of a document or a nonidentical copy is a separate document.

c.   ***Event.*** "Event" means the disaster alleged to have caused the Insured's Claimed Loss.

d.   ***Identify (Documents).*** When referring to documents, to "identify" means to describe, to the extent known: (i) the type of document; (ii) the general subject matter; (iii) the date; (iv) the author(s), according to the document; and (v) the person(s) to whom, according to the document, the document (or a copy) was to have been sent. Alternatively, to "identify" a document means to produce a copy.

e.   ***Identify (Natural Persons).*** When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number; (iii) email address; (iv) present or last known place of employment; (v) present or last known job title; and (vi) relationship, if any, to the parties. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent requests to identify that person.

f.   ***Identify (Non-Natural Persons or Entities).*** When referring to a corporate entity, partnership, or other unincorporated association, to "identify" means to give the: (i) corporate or entity name and, if known, the trade or other names under which it has done business during the relevant time period; (ii) state of incorporation or registration; (iii) address of its principal place of business; (iv) primary phone number; and (v) internet address. Once a corporate or other

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103



.12300759

business entity has been identified in accordance with this subparagraph, only the name of that entity needs to be listed in response to subsequent requests to identify that entity.

g.   **_Insurer._** "Insurer" means any person or entity alleged to have insured the Property that is the subject of the operative complaint, unless otherwise specified.

h.   **_Insured._** "Insured" means any named individual(s), corporate entity(ies), partnership(s), or other unincorporated association(s) alleging property damage as an Insured in the litigation, or asserting a claim under an assignment.

i.   **_Loss._** "Loss" means damage to the Property caused by the Event.

j.   **_Other Insurance._** "Other Insurance" means any insurance policy, other than the Policy in force on the date of the Event, that covers or potentially covers the Property or the Claimed Loss.

k.   **_Policy._** "Policy" means the insurance policy alleged to cover some or all of Insured's Claimed Loss that is the subject of the Insured's claim in the litigation.

l.   **_Privilege._** "Privilege" means information and documents that are protected from disclosure by the attorney-client privilege, or work-product protection, including any joint defense agreement. privilege may properly be asserted include communications that reflect the mental impressions, conclusions, opinions, or theories of an attorney. Documents routinely prepared in the ordinary course of business, including but not limited to adjusters' reports, and other expert analyses, including draft reports, are <u>not</u> privileged and should be produced.

m.   **_Property._** "Property" means the property (building or contents) that the Insured claims coverage for under the Policy in the litigation.

n.   **_Relating to._** "Relating to" means concerning, referring, describing, evidencing, or constituting.

(3) Instructions.

a.   The relevant time period for this Disaster Discovery begins on the date immediately before the Event and ends on the date the lawsuit is filed for the Claimed Loss, unless a different time period is indicated with respect to a specific production obligation as set out inPart 2 or Part 3 below.

b.   This Disaster Discovery is presumptively not subject to any objections except for attorney-client privilege or work-product protection, including a joint defense agreement. Documents withheld based on a privilege or work-product protection claim are subject to expressly making the claim. A detailed privilege log is required as specified in this Order or any subsequent Orders of the Court, otherwise documents withheld as privileged or work-product protected communications may be described briefly by category or type. Withholding documents on this basis does not alleviate any obligation to produce the withheld documents or additional information about them at a later date, if the Court orders or the applicable rules require production.

Standing Order for Disaster Discovery Protocols
Hurricane Ida Litigation
4

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103



**12300759**

c.   If a partial or incomplete or "unknown at this time" answer or production is given to any disclosure requirement in these Disaster Discovery Protocols, the responding party must state the reason that the answer or production is partial, incomplete, or unknown and when supplemental information or documents providing a complete response will be produced.

d.   For this Disaster Discovery, a party must disclose information and documents that the disclosing party has in its possession, custody, or control and that are reasonably available. This Disaster Discovery is subject to obligations on supplementation and relevant requirements concerning certification of responses. This Initial Discovery does not preclude either party from seeking additional discovery at a later date.

e.   This Disaster Discovery is subject to the attached Interim Protective Order unless the parties agree or the court orders otherwise. The Interim Protective Order will remain in place until and unless the parties agree on, or the court orders, a different protective order. Absent party agreement or court order, the Interim Protective Order does not apply to subsequent discovery.

f.   Within 14 days after the filing of a responsive pleading by the responding party, the Parties shall meet and confer on the format (e.g., searchable PDF, Excel spreadsheet) for the production of documents under these Disaster Protocols. This will not delay the timeframes for Initial Discovery, absent court order. Nor will production in one format preclude requesting production in another format, if applicable rules of discovery allow.

## PART 2: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURED

(1)   Timing.

Unless the Court orders otherwise, the Insured's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court.)

(2)   Information to be produced by the Insured:

a.   A description of the Insured's ownership or other interest in the Property.

b.   The address of the Property (or location of movable Property) on the date of the Event.

c.   The name of each Insurer and all policy numbers for each Policy or Other Insurance held by or potentially benefitting the Insured or the Property on the date of the loss, including relevant policy and claim numbers for any claims.

d.   Identify any current mortgagee or other known lien holder.

e.   A computation of each item or type of Claimed Loss, including contents claims if in dispute. When the Policy requires, the computation should reasonably identify or itemize price and quantity of materials.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:5 of 10 - Jefferson Parish Clerk of Court: 231840

**12300759**

f.  Identify any payments received under the Policy relating to the Event. Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

g.  Identify any grant or other similar program that the Insured applied for after the Event, including a Small Business Administration loan, seeking payment for all or any part of the Loss.

h.  Identify the public or other adjusters, estimators, inspectors, contractors, engineers, or other persons engaged by or on behalf of the Insured relating to the Claimed Loss.

i.  With respect to any Other Insurance, all policy numbers, the name of each insurer, and claim and docket numbers for any claims madefor coverage by the Insured on the same Property at issue in this litigation.

j.  Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

k.  A general description, including the court and docket number, of any other lawsuits arising from the Event relating to the Property.

l.  A general description of any known preexisting damage to the Property relating to the Claimed Loss.

m.  A general description of any claims for property damage or lawsuits resulting from property damage in the past ten years relating to the Property.

n.  Identify any sale, transfer, or foreclosure of the Property after the Event.

(3)  Complete and unaltered copies of the following documents to be produced by the Insured:

a.  Documents relating to the Claimed Loss, including: loss estimates; adjuster's reports; engineering reports; contractor's reports; estimates, bids, plans, or specifications regarding repair work (whether planned, in progress, or completed); photographs; videos; or other materials relating to the Claimed Loss, along with any receipts, invoices, and other records of actual costs to repair or replace the Claimed Loss. This shall include all reports or analyses, including draft reports, prepared on behalf of Insured.

b.  Proofs of loss for the Claimed Loss.

c.  Documents relied on by the Insured in generating any proof of loss required or provided under the Policy.

d.  Written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, the Property, or damages, or otherwise relating to the Insured's claim.

e.  Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Loss.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103



JON A. GEGENHEIMER

**12300759**

f. Written communications, photographs, or estimates of damages sought from or paid by any other insurer related to the Event.

g. The insurance policy with respect to any Other Insurance, and the claim numbers for claims made to recover Loss to the Property relating to the Event.

h. Appraisals or surveys of the Property condition within five years before, or any time after, the Event.

i. If there has been an appraisal under the Policy, documents relating to the appraisal process.

j. Any other document(s) on which the Insured relies to support the Claimed Loss.

## PART 3: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURER.

(1) Timing.

Unless the court orders otherwise, the Insurer's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court in response or answer to the plaintiffs claim). The disclosures related to Insurers and the use of the term "Insurer" under this Part shall extend to anyone acting for or on behalf of the Insurer in relation to the claim of the Insured, including the employees, contractors, and agents of either the Insurer or anyone providing services to the Insurer related to the Insured's claim or Claimed Loss.

(2) Information to be produced by the Insurer:

a. **If there is a dispute over coverage,** in whole or in part, an explanation of the Insurer's reason for the denial of coverage, including:
   i. Any exclusions or exceptions, or other coverage or legal defenses;
   ii. The factual basis for any exclusion, limitation, exception, or condition-based dispute or defense;
   iii. Whether there is also a dispute as to the value or amount of the Claimed Loss;
   iv. Any other basis on which coverage was denied.

b. **If there is a dispute over all or part of the valuation,** an explanation of the Insurer's basis for disputing the value or amount of the Claimed Loss, including:
   i. The Insurer's understanding of the nature of the dispute;
   ii. The amount the Insurer disputes and the basis for that dispute, including any applicable Policy provisions that the Insurer alleges or believes are relevant to the dispute; and
   iii. The amount the Insurer agrees to pay, if any, with respect to any undisputed part of the Claimed Loss.

c. Any Policy terms or conditions that the Insurer alleges the Insured failed to comply with, including conditions precedent or other terms.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103



12300759

d.  Any payments previously made under the Policy relating to the Event.

e.  A general description of any other basis for nonpayment of the Claimed Loss, in whole or in part.

f.  Any other Event-related lawsuits filed for the Property or the Insured.

g.  Identify the adjuster(s) who handled the claim.

h.  Identify the individual(s) who evaluated, recommended, made, approved, or rejected the claims decision.

i.  Identify the field personnel, estimators, inspectors, contractors, engineers, or other persons who participated in any investigation of the claims or the claims process, had any part relating to Insurer's evaluation process for the claims, or upon who the Insurer relied upon or received information from concerning Insurer's evaluation process or claim decision; and identify anyone who had any role in drafting, editing, reviewing, or approving any report(s), evaluation(s), or inspection(s) on behalf of Insurer involving the Insured's claim.

j.  If preexisting damage is at issue in the litigation, a general description of any prior claims in the past ten years for the Property.

(4)  Complete and unaltered copies of the following documents to be produced by the Insurer:

a.  The entire claim file maintained by the Insurer.

b.  The complete Policy in effect at the time of the Event.

c.  Assessments of the Claimed Loss, including: loss reports, expert reports that contain any description or analysis of the scope of loss or any defenses under the Policy, damage assessments, adjuster's reports, engineering reports, contractor's reports, and estimates of repair or replacement. This shall include all reports or analyses, including all drafts, prepared as part of the evaluation or claims process involving Insured's claim by Insurer, or documents or records reviewed in any way in connection with Insurer's handling of the claim.

d.  Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Claimed Loss.

e.  Any other evaluations of the Claimed Loss.

f.  Documents containing recordings, transcripts, or notes of statements, conversations, or communications by or between the Insurer and the Insured relating to the Event.

g.  Any claim log, journal, diary, or record maintained by the Insurer relating to the Claimed Loss. This includes all written records, written communications, records of oral communications, reports, audits, or other records, including any documents, envelopes, logs or other documents evidencing when Insurer came into possession of any such records, regarding any aspect of the Insured's claim or that are in any way relating to the Insurer's investigation into the Claimed

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103



**12300759**

Loss, Insurer's processing of Insured's claim (including adjustment, evaluation, and handling), or Insurer's claim decision.

h.   The complete underwriting file maintained by the Insurer relating to the Property, its conditions, or coverage.

i.   Proofs of loss for the Claimed Loss.

j.   If there has been an appraisal under the Policy, all documents relating to the appraisal process.

k.   Any manuals, policies, directives, guidelines, instructions (whether written, electronic, or otherwise), literature, or similar written materials that would pertain to the Claimed Loss, Hurricane or to similar types of claims, generally such that they would therefore be applicable to the Hurricane Case including the Insured's claim. This includes any document that Insurer relied upon, or intends to rely upon, pertaining to industry guidelines, standard practices, or recommended practices for adjusting first party claims.

l.   For non-NFIP Claims, written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

m.   Any other document(s) on which the Insurer relies to support its defenses.

**DONE AND SIGNED** this ___ day of _____, 2022, at Gretna, Jefferson Parish, Louisiana.

JUDGE NANCY A. MILLER
CHIEF JUDGE
DIVISION "I"

JUDGE RAYMOND S. STEIB, JR.
DIVISION "A"

JUDGE R. CHRISTOPHER COX III
DIVISION "B"

JUDGE JUNE BERRY DARENSBURG
DIVISION "C"

JUDGE SCOTT U. SCHLEGEL
DIVISION "D"

JUDGE FRANK A. BRINDISI
DIVISION "E"

JUDGE MICHAEL P. MENTZ
DIVISION "F"

JUDGE E. ADRIAN ADAMS
DIVISION "G"

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300759 MORTGAGE BOOK 5014 PAGE 103


JON A. GEGENHEIMER

**12300759**

JUDGE DONALD "CHICK" FORET
DIVISION "H"

JUDGE STEPHEN C. GREFER
DIVISION "J"

JUDGE ELLEN SHIRER KOVACH
DIVISION "K"

JUDGE DONALD A. ROWAN, JR.
DIVISION "L"

JUDGE SHAYNA BEEVERS MORVANT
DIVISION "M"

JUDGE STEPHEN D. ENRIGHT, JR.
DIVISION "N"

JUDGE DANYELLE M. TAYLOR
DIVISION "O"

JUDGE LEE V. FAULKNER, JR.
DIVISION "P"

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 .::: 12300759 MORTGAGE BOOK 5014 PAGE 103



01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:10 of 10 - Jefferson Parish Clerk of Court: 231840

12300760

FILED FOR RECORD 08/23/2023 10:35:33
Mandy Plaisance DY CLERK
JEFFERSON PARISH LA

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

### IN RE: HURRICANE IDA CLAIMS

### INTERIM PROTECTIVE ORDER REGARDING
### CERTAIN PROPERTY DAMAGES SUITS ARISING FROM HURRICANE IDA

The Disaster Discovery Protocols for First-Party Insurance Property Damage Cases for all cases involving first-party insurance property damage claims arising from Hurricane Ida ("Hurricane Cases") are designed to achieve more efficient and targeted discovery. Prompt entry of a protective order will allow the parties to begin exchanging documents and information without delay. This Interim Protective Order will remain in place until the parties agree to, or the Court orders, a different protective order, but absent agreement or court order, the Interim Protective Order will not apply to discovery conducted after the parties complete the Streamlined Settlement Program. The parties may agree to use the Interim Protective Order throughout litigation.

**IT IS HEREBY ORDERED** that the following restrictions and procedures apply to certain information, documents, and excerpts from documents and information the parties exchange in response to the Disaster Discovery Protocols:

1.  Any party may designate as "Confidential" any document, or information contained in or revealed in a document, provided in response to these Protocols or, if applicable, in subsequent discovery, if the party determines, in good faith, that the designation is necessary to protect the party. Information and documents a party designates as confidential will be stamped "CONFIDENTIAL." Confidential information or documents are referred to collectively as "Confidential Information."

2.  Unless the court orders otherwise, the Confidential Information disclosed will be held and may be used by any person receiving the information solely in this litigation.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300760 MORTGAGE BOOK 5014 PAGE 104



## 12300760

3.   If a party challenges another party's Confidential Information designation, counsel must make a good-faith effort to resolve the dispute. If that is unsuccessful, the challenging party may seek resolution by the Court. Nothing in this Interim Protective Order is an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party specifically reserves the right to object to the use or admissibility of all Confidential Information disclosed, in accordance with applicable law and court rules.

4.   Information or documents designated as "Confidential" must not be disclosed to any person, except:

    a.   the requesting party and counsel, including in-house or agency counsel;

    b.   employees of counsel assigned to and necessary to assist in the litigation;

    c.   consultants or experts assisting in the prosecution or defense of the litigation, to the extent deemed necessary by counsel;

    d.   any person from whom testimony is taken or is to be taken in this litigation, but that person may be shown the Confidential Information only in preparation for, and during, the testimony and may not retain the Confidential Information;

    e.   The judge, the court staff, including the clerk, case manager, court reporter, or other person with access to Confidential Information by virtue of his or her position with the court, or the jury; and

    f.   The Special Master, Deputy Special Master, and any mediator involved in resolving the case, who shall all be subject to these confidentiality provisions.

5.   Before disclosing or displaying Confidential Information to any person, a party must:

    a.   inform the person of the confidential nature of the information and documents; and

    b.   inform the person that the court has enjoined the use of the information or documents for any purpose other than this litigation and has enjoined the disclosure of that information or documents to any other person.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300760 MORTGAGE BOOK 5014 PAGE 104

Interim Protective Order for Disaster Discovery Protocols
Hurricane Ida Litigation
2



**12300760**

6. The Confidential Information may be displayed to and discussed with the persons identified in Paragraphs 4(c) and (d) only on the condition that before any such display or discussion, each person must be asked to sign an agreement to be bound by this Order in the form detailed in Section 6(a), *infra.*

6(a). The Confidentiality Agreement shall read as follows:

I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matter entitled [CASE CAPTION] have been designated as confidential. I have been informed that any of the documents or information labeled "CONFIDENTIAL" are confidential by Order of the Court.

I hereby agree that I will not disclose any information contained in the documents to any other person. I further agree not to use this information for any purpose other than this litigation.

_____       DATED: _____
Signature of [NAME]

_____       DATED: _____
Signature of Counsel

6(b). If the person refuses to sign an agreement in the form attached, the party seeking to disclose the Confidential Information may seek relief from the court.

7. The disclosure of a document or information without designating it as "Confidential Information" does not waive the right to designate the document or information as Confidential Information if the document or information is designated under this Order.

8. Documents or information filed with the court that is subject to confidential treatment under this Order, and any pleadings, motions, or other papers filed with the court disclosing any Confidential Information, must be filed under seal to the extent permitted by the law, rules, or court orders, and must be kept under seal until the court orders otherwise. To the extent the court requires any further act by the parties as a precondition to filing the documents or information under seal, the party filing the document or information is responsible for satisfying the requirements. If possible, only the confidential parts of documents of information filed with the court will be filed under seal.

EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300760 MORTGAGE BOOK 5014 PAGE 104

Interim Protective Order for Disaster Discovery Protocols
Hurricane Ida Litigation
3



.12300760

9.  At the conclusion of this litigation, the Confidential Information and any copies must be promptly (and in no event later than 60 days after entry of final judgment no longer subject to appeal) returned to the producing party or certified as destroyed, except that the parties' counsel may retain their working files on the condition that those files will remain confidential. Materials filed in the court will remain in the file unless the court orders their return.

10. Producing documents or information, including Confidential Information, in this litigation does not waive attorney-client privilege or work-product protection for the documents or information.

This Order does not diminish the right of any party to apply to the Court for a different or additional Protective Order relating to Confidential Information, to object to the production of documents or information, to apply to the court for an order compelling production of documents or information, or to modify this Order. Any party may seek enforcement of this Order.

DONE AND SIGNED this _14th_ day of _December_, 2022, at Gretna, Jefferson Parish, Louisiana.

JUDGE NANCY A. MILLER
CHIEF JUDGE
DIVISION "I"

JUDGE RAYMOND S. STEIB, JR.
DIVISION "A"

JUDGE R. CHRISTOPHER COX III
DIVISION "B"

JUDGE JUNE BERRY DARENSBURG
DIVISION "C"

JUDGE SCOTT U. SCHLEGEL
DIVISION "D"

JUDGE FRANK A. BRINDISI
DIVISION "E"

JUDGE MICHAEL P. MENTZ
DIVISION "F"

JUDGE E. ADRIAN ADAMS
DIVISION "G"

Interim Protective Order for Disaster Discovery Protocols
Hurricane Ida Litigation
4



EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300760 MORTGAGE BOOK 5014 PAGE 104

**12300760**

JUDGE DONALD "CHICK" FORET
DIVISION "H"

JUDGE STEPHEN C. GREFER
DIVISION "J"

JUDGE ELLEN SHIRER KOVACH
DIVISION "K"

JUDGE DONALD A. ROWAN, JR.
DIVISION "L"

JUDGE SHAYNA BEEVERS MORVANT
DIVISION "M"

JUDGE STEPHEN D. ENRIGHT, JR.
DIVISION "N"

JUDGE DANYELLE M. TAYLOR
DIVISION "O"

JUDGE LEE V. FAULKNER, JR.
DIVISION "P"


EFILE: 01/05/2023 12:51 PM JEFF PAR 7417832 david $0.00 ::: 12300760 MORTGAGE BOOK 5014 PAGE 104

01/05/2023 12:51:22 CERTIFIED TRUE COPY - Pg:5 of 5 - Jefferson Parish Clerk of Court: 231841

.12325320

FILED FOR RECORD 08/23/2023 10:35:48
Mandy Plaisance DY CLERK
JEFFERSON PARISH LA

## 24TH JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

## STATE OF LOUISIANA

## IN RE: HURRICANE IDA CLAIMS

FILED:_____

_____
**DEPUTY CLERK**

### STANDING CASE MANAGEMENT ORDER REGARDING
### CERTAIN PROPERTY DAMAGES SUITS ARISING FROM HURRICANE IDA,
### EXHIBIT A: LIST OF APPOINTED NEUTRALS

**IT IS HEREBY ORDERED** that the following individuals shall supplement and comprise the Appointed Neutrals referenced in the Standing Case Management Order, Section 3(B)(2)(a), *infra*, and are hereby appointed and shall proceed with all reasonable diligence and shall exercise their rights and responsibilities under the Streamlined Settlement Process ("SSP") as the Special Master may direct.

    **(2)**    **Approved Neutrals.** The Court hereby designates and appoints the following individuals as "neutrals" (mediators) for the SSP:

        **(a)**    Any person designated by the Special Master after consultation with the Court who is qualified pursuant to R.S. 13:4165(F)(5)(6), including:

| | |
|---|---|
| Hon. Carolyn Gill-Jefferson (ret.) | Hon. "Rusty" Knight (ret.) |
| Hon. Cornelius Regan (ret.) | Hon. Ronald J. Sholes (ret.) |
| Hon. Franz Zibilich (ret.) | Ashley Bass, Esq. |
| Jacques Bezou, Esq. | Hon. Glenn Ansardi (ret.) |
| Blair C. Constant, Esq. | Robert Raymond, Esq. |
| Michelle Craig, Esq. | Bobby M. Harges, Esq. |
| Fred Herman, Esq. | Ross Legarde, Esq. |
| Donald Massey, Esq. | Jonathan Pedersen, Esq. |
| Roger A. Javier, Esq. | Chadwick J. Mollere, Esq. |
| Ronald L. Faia, Jr., Esq. | Brian Reuter, Esq. |
| Joseph Hassinger, Esq. | Brigid Collins, Esq. |
| Stacy Palowsky, Esq. | Charles Cusimano, IV, Esq. |
| Christy Remy, Esq. | Harold Adkins, Esq. |
| David Bienvenu, Esq. | Mark Tauzier, Esq. |
| Jack Morris, Esq. | Lacy Smith, Esq. |
| Dustin Carter, Esq. | Eric Nowak, Esq. |

EFILE: 06/13/2023 11:07 AM JEFF PAR 7580166 david $0.00 ::: 12325320 MORTGAGE BOOK 5033 PAGE 85



.12325320

(b)   Any person designated as a neutral pursuant to any Case Management Order that the U.S. District Court for the Eastern District of Louisiana may enter in connection with Hurricane Ida cases.

DONE AND SIGNED this 26th day of April, 2023, at Gretna, Jefferson Parish, Louisiana.

JUDGE NANCY A. MILLER
CHIEF JUDGE
DIVISION "I"

JUDGE RAYMOND S. STEIB, JR.
DIVISION "A"

JUDGE R. CHRISTOPHER COX
DIVISION "B"

JUDGE JUNE BERRY DARENSBURG
DIVISION "C"

JUDGE SCOTT U. SCHLEGEL
DIVISION "D"

JUDGE FRANK A. BRINDISI
DIVISION "E"

JUDGE MICHAEL P. MENTZ
DIVISION "F"

JUDGE E. ADRIAN ADAMS
DIVISION "G"

JUDGE DONALD "CHICK" FORET
DIVISION "H"

JUDGE STEPHEN C. GREFER
DIVISION "J"

EFILE: 06/13/2023 11:07 AM JEFF PAR 7580166 david $0.00 ::: 12325320 MORTGAGE BOOK 5033 PAGE 85



12325320

JUDGE ELLEN SHIRER KOVACH
DIVISION "K"

JUDGE DONALD A. ROWAN, JR.
DIVISION "L"

JUDGE SHAYNA BEEVERS MORVANT
DIVISION "M"

JUDGE STEPHEN D. ENRIGHT, JR.
DIVISION "N"

JUDGE DANYELLE M. TAYLOR
DIVISION "O"

JUDGE LEE V. FAULKNER, JR.
DIVISION "P"

EFILE: 06/13/2023 11:07 AM JEFF PAR 7580166 david $0.00 ::: 12325320 MORTGAGE BOOK 5033 PAGE 85



06/13/2023 11:07:16 CERTIFIED TRUE COPY - Pg:3 of 3 - Jefferson Parish Clerk of Court: 2371148



**R. KYLE ARDOIN**
**SECRETARY OF STATE**
**P.O. BOX 94125**
**BATON ROUGE, LA  70804-9125**



Label 890-PB, Oct. 2015
Pitney Bowes

9489 0090 0027 6568 6739 28



GEOVERA SPECIALTY INSURANCE COMPANY
C/O CORPORATION SERVICE COMPANY
450 LAUREL STREET, 8TH FLOOR
BATON ROUGE, LA  70801